# EXHIBIT 3

RODERICK C. AND KATHLEEN HULL v. TOWN OF PLYMOUTH AND OTHERS.

[Cite as Hull v. Town of Plymouth, 143 N.H. 381.]

No. 95-835.

March 2, 1999.

Nixon, Raiche, Manning & Casinghino, P.A., of Manchester (Leslie C. Nixon on the brief and orally), for plaintiffs.

Gallagher, Callahan & Gartrell, P.A., of Concord (David A. Garfunkel and Brian C. Goudas on the brief, and Mr. Garfunkel orally), for defendants.

HORTON, J.

The defendants, the Town of Plymouth (town), New Hampshire Municipal Association Property-Liability Insurance Trust, Inc. (NHMA-PLIT), and Underwriters at Lloyd's, London (Lloyd's), appeal an order of the Superior Court (Smith, J.) granting summary judgment for the plaintiffs, Roderick C. and Kathleen Hull, and denying summary judgment for the defendants. We affirm.

The facts before the trial court were as follows. Roderick Hull sustained injuries in an automobile accident while working as a police officer for the town. He received workers' compensation



benefits from the town and the maximum amount of liability coverage carried by the other driver involved in the accident. Because such amounts did not fully compensate him for his injuries, he brought this declaratory judgment action to determine his entitlement to compensation under the uninsured/underinsured motorist provision of the town's liability policy.

NHMA-PLIT, a pooled risk management program authorized by RSA chapter 5-B (1988 & Supp.1998), insures the town for up to $500,000 in uninsured/underinsured motorist claims. Lloyd's insures the town for such claims in excess of those covered by NHMA-PLIT. The defendants objected to the plaintiffs' motion for summary judgment and filed a cross-motion, asserting that the plaintiffs were barred by the Workers' Compensation Law, RSA ch. 281-A (Supp.1998), from receiving uninsured/underinsured motorist benefits[*724 A.2d 1292] from the town or its insurers. The trial court held that the plaintiffs were not barred from seeking such coverage. This appeal followed.

When reviewing a grant of summary judgment, we look at the evidence, and all inferences that properly may be drawn therefrom. Cf. N.E. Tel. & Tel. Co. v. City of Franklin, 141 N.H. 449, 452, 685 A.2d 913, 916 (1996). We will affirm the grant of summary judgment if we find that there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. See id.

The trial court's decision was based primarily on its interpretation of "insurance carrier" as used in RSA 281-A:8, which provides, in part:

yee of an employer subject to this chapter shall be conclusively presumed to have provisions of this chapter and, on behalf of the employee or the employee's personal or resentatives, to have waived all rights of action whether at common law or by statute or ded under the laws of any other state or otherwise:

(a) Against the employer or the employer's insurance carrier or an association or group providing self-insurance to a number of employers....

The defendants argue that by using the words "shall include" in the definition of insurance carrier, the legislature did not exclude other kinds of insurers. They contend that "the plain, common sense meaning of 'insurance carrier' is simply any entity providing insurance to the employer."

We interpret statutes according to the plain meaning of the words the legislature used. See South Down Recreation Assoc. v. Moran, 141 N.H. 484, 487, 686 A.2d 314, 316 (1996). We focus "not on isolated words or phrases," but "on the statute as a whole." Id. (quotations omitted). "Our goal is to apply statutes in light of the legislature's intent in enacting them, and in light of the policy sought to be advanced by the entire statutory scheme." Id. (quotation omitted).

In a statutory definition, the word "include" is not generally considered a term of limitation. See 2A N. Singer, Sutherland Statutory Construction § 47.07, at 152 (5th ed. 1992). The term "insurance carrier," however, is used fairly consistently throughout the Workers' Compensation Law to refer specifically to an insurer providing workers' compensation insurance to an employer. See, e.g., RSA 281-A:23, :28, :31. But see RSA 281-A:23, V (using terms "insurer" and "insurance company"), :25 (using term "insurance company"). The use of the term "insurance carrier" in the statute as a whole provides no indication that it was intended to apply to carriers of other types of insurance except, perhaps, when those insurers are required by the statute to also provide compensation coverage as part of their policies. See RSA 281-A:6. Thus, a plain reading of the statute supports the plaintiffs' interpretation.

Even though we hold that the statute is clear on its face, the defendants contend that this interpretation is contrary to the legislative history behind RSA 281-A:8. In 1961, the legislature explicitly granted the employer's insurance carrier immunity by amending the statutory predecessor to RSA 281-A:8. See Thone v. Liberty Mutual Ins. Co., 130 N.H. 702, 706, 549 A.2d 778, 781 (1988) (discussing amendment of RSA 281:12 (repealed 1988)); Laws 1988, 194:1, I (noting that "RSA 281-A is a reenactment of the substance of RSA 281"). The Senate Journal states that the amendment "[c]larifies the original intent of the law to provide, that for the purposes of employer liability, the employer[*724 A.2d 1293]. and the employer's insurance carrier are one and the same." N.H.S. Journal 636-37

**Page 384**

(1961). The 1961 amendment was a direct response to our decision in Smith v. American Employers' Insurance Co., 102 N.H. 530, 163 A.2d 564 (1960), that an employee could bring a claim against the employer's workers' compensation carrier for negligent inspection. See Thone, 130 N.H. at 706, 549 A.2d at 781. We revisited the question of the carrier's independent tort liability in Thone, where the plaintiffs claimed that the workers' compensation insurer failed to properly inspect the workplace, and thus caused an explosion that killed several employees. We held in Thone that RSA 281-A:8 was a permissible bar to the negligence action brought against the employer's workers' compensation carrier. See id. at 706-07, 549 A.2d at 781.

The legislative history suggests that the amendment to RSA 281-A:8 was intended to protect the workers' compensation carrier from independent tort liability for employees' work-related injuries. The

*not* persuade us that RSA 281-A:8 indiscriminately immunizes the employer's various *insurance* carriers from employee claims and actions. Thus, for instance, while the employer's *immunity* normally insulates its third party liability carriers from coverage obligations to injured *workers*, cf. Hughes v. Chitty, 283 F.Supp. 734, 739 (E.D.La.1968), aff'd, 415 F.2d 1150 (5th Cir.1969), *such* carriers may be held liable for work-related injuries caused by their independent torts, see Sims v. American Casualty Company, 131 Ga.App. 461, 206 S.E.2d 121, 130-31, aff'd, 232 Ga. 787, 209 S.E.2d 61 (1974).

The defendants next argue that "the question of insurance carrier immunity under the Workers' Compensation [Law] should turn upon a quid pro quo analysis, not upon the subject matter of the insurance provided." Such analysis, however, does not support the defendants' position. The workers' compensation scheme is based on a "fundamental quid pro quo," Thompson v. Forest, 136 N.H. 215, 219, 614 A.2d 1064, 1067 (1992), which is "the tort immunity conferred on the employer ... [in exchange] for providing no-fault workers' compensation benefits." Id. at 218, 614 A.2d at 1066 (emphasis added) (quotation omitted). At issue here, however, is not tort liability, but the uninsured/underinsured motorist carrier's contractual liability.

[T]he uninsured motorist carrier does not insure the tortfeasor against liability, but insures the employee against the risk of inadequate compensation if he is injured in an accident with an uninsured motorist. The obligation of the uninsured motorist carrier arises out of contract,

**Page 385**

although that obligation is precipitated by a third-party's tortious act.

Merchants Mut. Ins. Group v. Orthopedic Prof. Ass'n, 124 N.H. 648, 657-58, 480 A.2d 840, 845 (1984). The employer's tort immunity is left wholly intact by the employee's recovery of uninsured/underinsured motorist benefits, and the possibility of double recovery is offset by the availability of a workers' compensation lien. See RSA 281-A:13, I(b); Rooney v. Fireman's Fund Ins. Co., 138 N.H. 637, 641, 645 A.2d 52, 54-55 (1994). Thus, allowing an employee to collect benefits from the employer's uninsured/underinsured motorist insurer does not upset the fundamental quid pro quo upon which the Workers' Compensation Law is based.

Finally, the defendants urge us to follow a number of cases from other jurisdictions holding that their workers' compensation statutes bar an employee from obtaining uninsured/underinsured motorist benefits from the employer's insurer. We decline to do so.

Affirmed.

JOHNSON and THAYER, JJ., sat but did not participate in the decision; the others concurred.

---

Lawriter Corporation. All rights reserved.

The Casemaker Online database is a compilation exclusively owned by Lawriter Corporation. The database is provided for use under the terms, notices and conditions as expressly stated under the online end user license agreement to which all users assent in order to access the database.

# EXHIBIT 4

90 N.Y.2d 703, 688 N.E.2d 235, 665 N.Y.S.2d 379, 1997 N.Y. Slip Op. 10094

**View National Reporter System version**

In the Matter of Charlotte H. Shutter, Appellant,

v.

Philips Display Components Company et al., Respondents.

Court of Appeals of New York

Argued October 15, 1997;

Decided November 20, 1997

CITE TITLE AS: Matter of Shutter v Philips Display Components Co.

SUMMARY

Appeal, by permission of the Court of Appeals, from an order of the Appellate Division of the Supreme Court in the Third Judicial Department, entered January 23, 1997, which affirmed a decision of the Workers' Compensation Board ruling that the employer's workers' compensation insurance carrier is entitled to an offset against claimant's net recovery under an uninsured motorist policy and reopening and restoring the case to the Trial Calendar for the computation of deficiency compensation.

Matter of Shutter v Philips Display Components Co., 235 AD2d 904, reversed.

HEADNOTES

Workers' Compensation--Carrier's Lien--Claimant's Uninsured Motorist Benefits

(1) A workers' compensation insurance carrier may not invoke Workers' Compensation Law § 29 (4) to offset its future compensation payments to a claimant, who was disabled in a work-related auto accident, by the amount that the claimant recovered in uninsured motorist benefits under an insurance policy she purchased. Workers' Compensation Law § 29 (4) specifically authorizes application of the lien or offset only against a specific category of recoveries--i.e., those constituting the proceeds of an "action" against "such other." The term "such other" relates to the person whose "negligence or wrong" causes the claimant's harm (*see,* Workers' Compensation Law § 29 [1]). Together, these terms indicate that the lien and offset tools may be applied only against recoveries from the third-party tortfeasors who are responsible for the claimant's injuries. Thus, under the statute's plain terms, the workers' compensation carrier is subrogated to the employee's rights against the third party, indicating a legislative decision that the loss be borne by the wrongdoer. Here, the funds claimant recovered from her own insurance carrier under the uninsured motorist benefits endorsement were not recovered in an action against the third-party tortfeasor and, therefore, under a strict reading of the statute's terms, the carrier is not entitled to a credit based on those proceeds. Further, while the statutory scheme requires vigilant preservation of the carrier's subrogation rights in an action against a "third party" (Workers' Compensation Law § 29 [2], [5]), it does not contemplate intervention by the carrier or mandate preservation of any similar subrogation right when the injured employee proceeds with a claim under her own insurance policy. Nor does the injured employee's insurer step into the shoes of the tortfeasor, such that recovery from the claimant's uninsurance coverage should be deemed the equivalent of recovery from the ***704**



negligent actor. Although liability will be measured by the damages caused by the tortfeasor, the insurer's obligation to pay is not derived from any relationship with or duty owed to the tortfeasor, and the insurer's payments do not discharge the tortfeasor's liability.

Workers' Compensation--Carrier's Lien--Claimant's Uninsured Motorist Benefits

(2) Workers' Compensation Law § 29 (1-a), which exempts from a workers' compensation lien "the proceeds of any recovery received pursuant to [Insurance Law § 5104 (a)]" which constitute compensation and/or medical benefits paid in lieu of first-party benefits, has no application to the proceeds of claims made against an insured's own uninsured motorist benefits, since Insurance Law § 5104 (a) governs the right of recovery in a serious personal injury action against another person who is "covered" within the meaning of the statute.

Workers' Compensation--Carrier's Lien--Claimant's Uninsured Motorist Benefits--Double Recovery

(3) The fact that a workers' compensation insurance carrier may not invoke Workers' Compensation Law § 29 (4) to offset its future compensation payments to a claimant, who was disabled in a work-

ccident, by the amount that the claimant recovered in uninsured motorist benefits surance policy she purchased does not give the injured employee a double recovery for elements of loss. By definition, uninsured motorist coverage compensates for onomic" loss and economic loss in excess of basic economic loss, and shall not duplicate any ment of basic economic loss (Insurance Law § 3420 [f] [1]). Workers' compensation benefits by definition are limited to reimbursement for basic economic loss (Insurance Law § 3420 [f] [1], [2]), and they do not provide an award for pain and suffering.

TOTAL CLIENT SERVICE LIBRARY REFERENCES

Am Jur 2d, Automobile Insurance, §§ 293, 331; Workers' Compensation, §§ 97, 98, 111.
Insurance Law § 3420 (f); § 5104 (a); Workers' Compensation Law § 29.
NY Jur 2d, Insurance, §§ 1516-1518, 1537, 1583; Workers' Compensation, §§ 122, 125.

ANNOTATION REFERENCES

See ALR Index under Automobile Insurance; Workers' Compensation.

POINTS OF COUNSEL

*Michaels, Bell & Smolak, P. C.*, Auburn (*Michael G. Bersani* of counsel), for appellant.
I. The Court below erred in holding that the workers' compensation carrier is entitled to an offset against the proceeds of claimant's uninsured motorist insurance recovery. A workers' compensation carrier has the right ***705**

(Cite as: 90 N.Y.2d 703, *705)

to a lien or offset only against the proceeds of claimant's recovery from a third-party tortfeasor. (*Matter of Simmons v St. Lawrence County CDP*, 147 AD2d 323; *Matter of Fellner v Country Wide Ins.*, 95 AD2d 106; *Vinson v Berkowitz*, 83 AD2d 531; *Matter of Granger v Urda*, 44 NY2d 91; *Matter of De Filippis v Kirchner*, 217 AD2d 145; *Commissioners of State Ins. Fund v Miller*, 4 AD2d 481; *Hartford Acc. & Indem. Co. v Glickman*, 84 Misc 2d 33; *Matter of Woodward v Conklin & Son*, 171 App Div 736; *Caulfield v Elmhurst Contr. Co.*, 268 App Div 661, 269 App Div 671, 294 NY 803; *Employers Mut. Liab. Ins. Co. v Refined Syrups & Sugars*, 184 Misc 941.) II. Even if the carrier is entitled to an offset, the Court erred in holding that the offset applies against both the mandatory portion (which in this case is $10,000) and the nonmandatory portion (which in this case is $290,000) of the uninsured motorists policy; it should apply solely to the mandatory portion. III. Even if the carrier is entitled to an offset, the Court erred in ruling that claimant was not entitled to an exception to the offset pursuant to Workers' Compensation Law § 29 (1-a). (*Dietrick v Kemper Ins. Co.*, 76 NY2d 248; *Matter of Simmons v St. Lawrence County CDP*, 147 AD2d 323; *Vinson v Berkowitz*, 83 AD2d 531; *Matter of Granger v Urda*, 44 NY2d 91; *Fox v Atlantic Mut. Ins. Co.*, 132 AD2d 17.)

*Whyland & Richmond*, N. Syracuse (*John P. Ramos* of counsel), for Travelers Insurance Company, respondent.
I. The carrier is entitled to an offset against claimant's net recovery. (*Matter of Fellner v Country Wide Ins.*, 95 AD2d 106; *Matter of Johnson v Buffalo & Erie County Private Indus. Council*, 84 NY2d 13; *Zappone v Home Ins. Co.*, 55 NY2d 131; *Matter of Berenberg v Park Mem. Chapel*, 286 App Div 167; *Commissioners of State Ins. Fund v Miller*, 4 AD2d 481; *Hartford Acc. & Indem. Co. v Glickman*, 84 Misc 2d 33.) II. Claimant is barred from further benefits as there was no consent by the compensation carrier. (*Matter of Johnson v Buffalo & Erie County Private Indus. Council*, 84 NY2d 13; *Matter of Daly v Daly Constr. Co.*, 136 AD2d 798.)

OPINION OF THE COURT

Titone, J.
(1) This appeal presents the question whether a workers' compensation insurance carrier may invoke Workers' Compensation Law § 29 (4) to offset its future compensation payments to a claimant, who was disabled in a work-related auto accident, ***706**

(Cite as: 90 N.Y.2d 703, *706)

by the amount that the claimant recovered in uninsured motorist benefits under an insurance policy she purchased. We conclude that, under this State's Workers' Compensation Law, the carrier may only offset its future payments by amounts recovered in an action against a third-party tortfeasor, and thus that the credit is unavailable in these circumstances.
Claimant Charlotte Shutter was injured in a single car accident when the driver of the taxi she had

*sport* her to the airport for a business trip lost control of the vehicle. Because the taxi *insurer* disclaimed coverage, and the driver was uninsured, claimant filed a claim under the *red* motorist provisions of her own automobile insurance policy, which had a coverage limit of *0,000*. Claimant recovered $124,697.95 under this clause from her insurer after arbitration. *Claimant* also received workers' compensation benefits from her employer, Philips Display Components Company, based upon her permanent and partial disability. The employer's workers' compensation insurance carrier sought to offset claimant's future compensation payments by the amount she obtained under the uninsured motorist provisions of her policy. [FN1] The Workers' Compensation Law Judge ruled that the carrier was not entitled to the offset because the uninsured motor vehicle coverage corresponded to "first party coverage paid for by the claimant," which is not subject to offset under Workers' Compensation Law § 29.

FN1 The carrier did not attempt to assert a lien on the insurance proceeds pursuant to Workers' Compensation Law § 29 (1).

The Workers' Compensation Board reversed. The Board concluded that the employer was entitled to the offset because claimant's insurance recovery "did not represent payment (in lieu of first party benefits) for basic economic loss, but instead represented payment for non-economic loss made" pursuant to Insurance Law § 3420 (f) (1) and (2), and thus did not fall within the exemption created by Workers' Compensation Law § 29 (1-a).

The Appellate Division affirmed. The Court concluded that the lien and offset remedies authorized by Workers' Compensation Law § 29 were not "specifically limited to actions against third-party tortfeasors." (235 AD2d 904, 905.) Thus, the Court concluded that the carrier could offset its future workers' compensation benefit payments by the proceeds of claimant's uninsured motorist claim. We now reverse. ***707**

(Cite as: 90 N.Y.2d 703, *707)

The employer's workers' compensation carrier seeks to offset its future compensation payments to claimant by the amount that claimant recovered in uninsured motorist benefits under her own insurance policy. The availability of the credit that the carrier seeks depends on our construction of Workers' Compensation Law § 29. That statute provides that if an employee who is eligible for workers' compensation benefits is injured "by the *negligence or wrong of another* not in the same employ, such injured employee ... [may] pursue his remedy *against such other* subject to the provisions of this chapter" (Workers' Compensation Law § 29 [1] [emphasis supplied]). The statute further allows that if the injured employee receives workers' compensation benefits "and desire[s] to bring action *against such other* ... the [workers' compensation carrier] ... shall have a lien on the proceeds of any recovery *from such other*" to the extent of the compensation provided (*id.* [emphasis supplied]). Similarly, the statute's "offset provision" states that if the injured employee "proceed[s] against *such other,* [the workers' compensation carrier] ... shall contribute only the deficiency, if any, between the amount of the *recovery against such other person* actually collected, and the compensation provided ... by this chapter" (Workers' Compensation Law § 29 [4] [emphasis supplied]).

The statute protects the compensation carrier's subrogation rights by providing that if the injured employee takes compensation benefits, "but has failed to [timely] commence action against such other, ... such failure shall operate as an assignment of the cause of action against such other to the ... [workers' compensation insurance carrier]" (Workers' Compensation Law § 29 [2]), provided that the carrier complies with certain requirements (*see, id.*). Additionally, the statute requires the carrier's consent or a court-issued compromise order for a claimant to settle a third-party action and continue to receive workers' compensation payments (Workers' Compensation Law § 29 [5]; *Matter of Johnson v Buffalo & Erie County Private Indus. Council,* 84 NY2d 13, 19).

Here, the workers' compensation carrier contends that the availability of the offset should not depend upon the pocket that finances the claimant's recovery, and that "any" recovery by the claimant based on the work-related automobile accident should reduce the carrier's payment obligation. We disagree with this expansive construction of the statute for several reasons.

As an initial matter, the workers' compensation system is the creature of a comprehensive statutory scheme (*Matter of* ***708**

(Cite as: 90 N.Y.2d 703, *708)

Urda, 44 NY2d 91, 97). Thus, the terms of its governing statutes, including the lien and provisions at issue here, should be strictly construed in light of their legislative purpose (Matter ...ob, 86 NY2d 651, 657).

Contrary to the carrier's position, the Workers' Compensation Law does not broadly authorize liens and offsets to be applied against "all" or "any" recoveries from others without regard for their source. Rather, Workers' Compensation Law § 29 (4) specifically authorizes application of the lien or offset only against a specific category of recoveries--i.e., those constituting the proceeds of an action against "such other." The term "such other" relates back to the earlier mention in section 29 (1) of the person whose "negligence or wrong" causes the claimant's harm. Together, these terms indicate that the lien and offset tools may be applied only against recoveries from the third-party tortfeasors who are responsible for the claimant's injuries. [FN2] Thus, under the statute's plain terms, the workers' compensation carrier is subrogated to the employee's rights against the third party, indicating a legislative decision that the loss be borne by the wrongdoer.

FN2 Thus, this State's workers' compensation lien and offset provisions are distinguishable from the legislation that some States have chosen to enact which either specifically address the availability of carrier liens or credits against the proceeds of uninsured or underinsured motorist claims (*see, e.g.,* Me Rev Stat Annot, tit 39-A, § 221 [3] [F]; NH Rev Stat Annot § 281-A:13 [I]), or which fail to include language limiting the right of subrogation to tort recoveries (*see, e.g.,* SD Codified Laws § 62-4-39).

Here, the funds claimant recovered from her own insurance carrier under the uninsured motorist benefits endorsement were not recovered from the third-party tortfeasor. Thus, under a strict reading of the statute's terms, the carrier is not entitled to a credit based on those proceeds.

Our conclusion that the carrier may not enjoy a credit from uninsurance payments is buttressed by the fact that the statutory scheme requires vigilant preservation of the carrier's subrogation rights in an "action" against a "third party" (Workers' Compensation Law § 29 [2], [5]), but does not contemplate intervention by the carrier or mandate preservation of any similar subrogation right when the injured employee proceeds with a claim under her own insurance policy. Indeed, Workers' Compensation Law § 30 provides, with exceptions not relevant here, that "[n]o benefits, savings or *insurance* of the injured employee, independent of the provisions of this chapter, shall be considered in determining the compensation or ***709**

(Cite as: 90 N.Y.2d 703, *709)

benefits to be paid under this chapter" (emphasis supplied). The carrier's construction of Workers' Compensation Law § 29 thus runs afoul of this prohibition without clear statutory authority or other satisfactory justification.

The carrier nonetheless contends that the injured employee's insurer steps into the shoes of the tortfeasor, such that recovery from the claimant's uninsurance coverage should be deemed the equivalent of recovery from the negligent actor. We disagree. Where the claim is made against the injured worker's uninsured motorist coverage, the recovery is predicated on that insurer's contractual obligation to assume the risk of loss associated with an uninsured motorist on the insured's behalf in exchange for the payment of premiums. Although liability will be measured by the damages caused by the tortfeasor, the insurer's obligation to pay is not derived from any relationship with or duty owed to the tortfeasor (*Commissioners of State Ins. Fund v Miller*, 4 AD2d 481; *Hartford Acc. & Indem. Co. v Glickman*, 84 Misc 2d 33). [FN3] Additionally, the insurer's payments do not discharge the tortfeasor's liability. The fact that the insured is now obligated by statute to purchase $10,000 in underinsured motorist coverage does not require a different result, as the carrier contends, because it does not create a relationship between the tortfeasor and the injured worker's insurance carrier that would render one the "alter ego" of the other (*see, Commissioners of State Ins. Fund v Miller*, 4 AD2d 481, 482-483, *supra*).

FN3 The carrier contends that *Glickman* and *Miller* are no longer valuable precedent, given that they predate the enactment of the No-Fault Law. However, the carrier fails to direct us to any provision of that law that would invalidate the holdings of either of these cases.

The carrier also argues that because the insurance proceeds here do not fall within the exemption from the lien and offset created by Workers' Compensation Law § 29 (1-a), it follows that the lien and offset remedies are not barred. This argument misses the mark, however, because it presumes that the lien or offset is available in the first instance, which the carrier has failed to establish.

...event, section 29 (1-a) has no relevance here. Section 29 (1-a) exempts from a workers' ...sation lien "the proceeds of any recovery received pursuant to [Insurance Law § 5104 (a)]" ... constitute compensation and/or medical ***710**



benefits paid in lieu of first-party benefits. [FN4] In turn, Insurance Law § 5104 (a) governs the right of recovery in a serious personal injury action against another person who is "covered" within the meaning of the statute. [FN5] Given that exemption provisions apply by their terms only to a limited class of recoveries in third-party actions, they have no application to the proceeds of claims made against an insured's own uninsured motorist benefits.

FN4 First-party benefits are defined as "payments to reimburse a person for basic economic loss on account of personal injury arising out of the use or operation of a motor vehicle, less" certain deductions (Insurance Law § 5102 [b]).

FN5 Section 29 (1-a) does not preclude placement of the lien on those recoveries received pursuant to Insurance Law § 5104 (b), which concerns "action[s] by or on behalf of a covered person, against a non-covered person."

(3) Finally, by definition, uninsured motorist coverage compensates for "noneconomic" loss [FN6] and economic loss in excess of basic economic loss, [FN7] and shall not duplicate any element of basic economic loss (Insurance Law § 3420 [f] [1]). Workers' compensation benefits by definition are limited to reimbursement for basic economic loss (Workers' Compensation Law § 10 *et seq.*; *Matter of Granger v Urda*, 44 NY2d 91, *supra*), and they do "not provide an award for pain and suffering" (Minkowitz, Supp Practice Commentaries, McKinney's Cons Laws of NY, Book 64, Workers' Compensation Law § 29, 1997 Pocket Part, at 37, 38). Thus, the unavailability of the offset here does not give the injured employee a double recovery for the same elements of loss.

FN6 Noneconomic loss is defined as "pain and suffering and similar non-monetary detriment" (Insurance Law § 5102 [c]).

FN7 Basic economic loss generally refers to medical expenses, and lost earnings "for not more than three years from the date of the accident causing the injury," up to a maximum statutory dollar amount of $50,000 per person (Insurance Law § 5102 [a] [2]).

Accordingly, the order of the Appellate Division should be reversed, with costs, and the matter remitted to that Court, with directions to remand to the Workers' Compensation Board for further proceedings in accordance with this opinion.

Chief Judge Kaye and Judges Bellacosa, Smith, Levine, Ciparick and Wesley concur.
Order reversed, etc. ***711**



Copr. (c) 2007, Secretary of State, State of New York.

N.Y. 1997.
SHUTTER v PHILIPS DISPLAY CO
END OF DOCUMENT

Copyright (c) 2007 Thomson/West