UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

HEIDI M. BAKER,

    Plaintiff,

v.                                            C.A. No. 07-314-ML

SAFETY SOURCE NORTHEAST[1] and
ST. PAUL TRAVELERS INSURANCE
COMPANY,

    Defendants.

## MEMORANDUM AND ORDER

Plaintiff seeks a declaratory judgment as to whether or not she is entitled to underinsured motorist ("UIM") benefits through her employer's automobile insurance policy. On January 28, 2009, this Court adopted Magistrate Judge Martin's Report and Recommendation granting Defendants' motion for summary judgment and denying Plaintiff's motion for summary judgment. The central holding was that "[u]nder Massachusetts law Plaintiff is precluded from recovering [UIM] benefits from St. Paul's because she has collected workers' compensation benefits for the same injury." Report and Recommendation 11, Docket No. 28. Plaintiff appealed the decision and the First Circuit, relying on an exception to the general rule precluding the receipt of both UIM benefits and workers' compensation benefits, vacated and remanded on the narrow question of whether or not the UIM coverage at issue had been "explicitly purchased" for the purpose of providing such coverage to employees injured in the course of their employment.

---

[1] Baker dismissed her claim against Safety Source Northeast on November 16, 2007.

1

Both parties have moved for summary judgment. For the reasons set forth below, Plaintiff's motion for summary judgment is denied and Defendants' motion for summary judgment is granted.

## I. Facts

Plaintiff, Heidi Baker ("Baker"), is a Rhode Island resident who worked for Safety Source Northeast ("Safety Source"), a Massachusetts corporation. On December 17, 2002, Baker was injured in an automobile accident occurring in Massachusetts while she was acting within the scope of her employment. While traveling on an expressway, Baker was struck from behind while driving a Safety Source vehicle. Pl.'s Statement Undisputed Facts, April 30, 2008, Docket No. 13. The Safety Source vehicle, a Ford Econoline, was a "covered auto[]" under an insurance policy issued by St. Paul Travelers Insurance Company ("St. Paul") to Safety Source. Business Auto Decl. 3, Docket No. 27.

Baker was injured as a result of the accident and she settled a claim against the tortfeasor for $20,000. Baker then made an underinsured motorist ("UIM") claim against her personal insurance company and settled that claim for $25,000. Also, as a result of her injuries, Baker began collecting workers' compensation from the state of Rhode Island pursuant to R.I. Gen. Laws § 28-33-1. In addition, Baker sought UIM coverage under Safety Source's policy with St. Paul. St. Paul denied Baker's claim. Baker then brought suit against St. Paul alleging that the insurance coverage of the tortfeasor was insufficient to cover the cost of her injuries and that she was entitled to recover under the UIM provision in Safety Source's insurance policy.

The Safety Source insurance policy (policy MA 05700143) had an effective date of December 12, 2002, through December 12, 2003. Business Auto Decl. 1. Baker's injury occurred during this period of coverage and the Ford Econoline that Baker was driving is listed in the schedule of covered

autos. Business Auto Decl. 3. The parties do not dispute that the vehicle was covered or that Baker was acting within the scope of her employment at the time of the injury.

The Safety Source insurance policy contains an endorsement (endorsement MM 99 54 09 98) that "modifies insurance provided under the . . . BUSINESS AUTO COVERAGE FORM." Business Auto Decl. 35. The endorsement, entitled Underinsured Motorist Coverage, specifies that, subject to exclusion and limitation, "[w]e will pay all sums an insured is legally entitled to recover as damages from the owner or operator of an 'underinsured motor vehicle.'" Id. Safety Source paid a $79 premium for the UIM coverage. The coverage provides up to $100,000 per person and $300,000 per accident. Id. at 2.

Both this Court and the First Circuit determined that Baker's claim was governed by Massachusetts law. Safety Source is a Massachusetts corporation whose insurance policy was executed in Massachusetts. Under Rhode Island law, "[w]hen the insured is a Massachusetts corporation doing business in Massachusetts, and the contract is executed and delivered in Massachusetts, Massachusetts law governs the interpretation of the contract." Baker v. St. Paul Travelers Ins. Co., 595 F.3d 391, 392-93 (1st Cir. 2010) (quoting Hartford Cas. Ins. Co. v. A&M Assoc., Ltd., 200 F.Supp.2d 84, 87 (D.R.I. 2002)).

This Court determined that the exclusivity provision of a Massachusetts statute governing workers' compensation barred Baker's claim. In Massachusetts, "an employee [who] . . . accepts payment of compensation on account of personal injury under this chapter . . . release[s] . . . the insurer of all claims or demands at common law, if any, arising from the injury." M.G.L.A. 152 § 23. In Berger v. H.P. Hood, Inc., 416 Mass. 652 (1993), the Massachusetts Supreme Judicial Court ("SJC") determined that the "exclusivity provision of a Workers' Compensation Act bars an

3

employee from recovering [UIM] benefits from an employer for an injury in the course of employment." Berger, 416 Mass. at 655. Because Baker was receiving workers' compensation benefits, this Court adopted the Report and Recommendation and granted St. Paul's motion for summary judgment on Baker's claim that she was entitled to receive UIM benefits.

Baker appealed her case to the First Circuit. There, the Court cited language from an SJC decision in which that Court stated that "we would not extend the bar imposed by the exclusivity provision of the Workers' Compensation Act to make ineffective [UIM] coverage . . . that an employer *explicitly purchased* for the purpose of providing [UIM] coverage . . . to employees injured in the course of their employment." See Nat. Union Fire Ins. Co. of Pittsburgh, Pa. v. Figaratto, 423 Mass. 346, 350-51 (1996) (italics added). The First Circuit vacated and remanded for appropriate discovery as to "whether Safety 'explicitly purchased' its underinsured motorist coverage 'for the purpose of providing UIM coverage to employees injured in the course of their employment.'" Baker, 595 F.3d at 395 (quoting Nat.Union, 423 Mass. at 350-51).

The narrow issue before this Court on the parties' cross-motions for summary judgment is whether or not Safety Source "explicitly purchased" UIM coverage from St. Paul for the purpose of providing UIM benefits to employees who were injured during the course of their employment.

**II. Standard**

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that might affect the outcome of the suit, see Lockridge v. Univ. of Maine Sys., 597 F.3d 464, 469 n.3 (1st Cir. 2010) (quoting Anderson v. Liberty Lobby Inc., 477 U.S.

4

242, 248 (1986)), and genuine disputes are those that a jury could resolve in either party's favor. See Lockridge, 597 F.3d at 469 n.3 (quoting Santoni v. Potter, 369 F.3d 594, 598 (1st Cir. 2004)). All reasonable inferences are drawn in favor of the non-moving party. See Cortes-Rivera v. Dept. of Corrections and Rehab. of P.R., 626 F.3d 21, 26 (1st Cir. 2010).

On cross-motions for summary judgment, all reasonable inferences "are reviewed in the light most favorable to the respective non-moving part[y]." Medeiros v. Vincent, 431 F.3d 25, 29 (1st Cir. 2005). The fact that both sides have moved for summary judgment "neither dilutes nor distorts" the summary judgment standard of review. See Hartford Fire Ins. Co. v. CNA Ins. Co., 633 F.3d 50, 53 (1st Cir. 2011). The Court "must determine based on the undisputed facts" whether either party is entitled to judgment as a matter of law. Id.

### III. Discussion

Baker seeks a declaratory judgment that Safety Source's insurance policy provides UIM coverage that would cover her claim. She states that the "insurance coverage of the party responsible for the accident was insufficient to cover the medical cost[s]." Pl.'s Compl ¶ 8, Docket No. 1-1. In its decision to remand, the First Circuit stated that "it appears that in 2002 there was no compulsory underinsured motorist coverage requirement." Baker, 595 F.3d at 394-95. Insurers were required, however, to *offer* underinsured motorist coverage. See id.; see also M.G.L.A. 175 § 113L(1)-(2). In this case, there is no dispute that Safety Source purchased UIM coverage. The question remains, however, whether such optional insurance was "explicitly purchased" for the purpose of covering employees injured during the course of their employment. If not, per the Massachusetts exclusivity provision, Baker's receipt of workers' compensation benefits would preclude her from receiving UIM

5

benefits.

The exclusivity provision states that "[i]f an employee files any claim or accepts payment of compensation on account of personal injury under this chapter . . . such action shall constitute a release to the insurer of all claims or demands at common law, if any, arising from the injury." M.G.L.A. 152 § 23.[2] Claims for personal injury that arise in the course of employment are still common law claims. See Berger, 416 Mass. at 655.

The SJC has specifically addressed the exclusivity provision with regard to UIM benefits and held that an employee injured in an employer's motor vehicle during the course of her employment could not collect workers' compensation benefits for such injury and also recover UIM benefits through her employer's insurance. See Nat. Union, 423 Mass. at 348 (discussing Berger, 416 Mass. at 655-56). The First Circuit, however, noted that this general bar is not without exception. The bar against double recovery does not extend "the exclusivity provision of the Workers' Compensation Act to make ineffective [UIM] coverage . . . that an employer *explicitly purchased* for the purpose of providing [UIM] coverage . . . to employees injured in the course of their employment." Nat. Union, 423 Mass. at 350-51 (emphasis added).

The narrow issue now before the Court is whether Safety Source "explicitly purchased" UIM coverage in order to protect employees injured during the course of their employment.

---

[2] Baker never received workers' compensation under "this chapter" because her workers' compensation benefits were provided through the state of Rhode Island. The First Circuit, however, concluded that the SJC would likely "apply the conclusions of Berger and National Union to this case, even though those cases concerned collection of WC payments under the Massachusetts worker's compensation scheme." Baker, 595 F.3d at 394.

A. Baker's Motion for Summary Judgment

Baker argues in her motion for summary judgment that Safety Source "explicitly purchased" UIM coverage for the purpose of covering employees such as herself. Essentially, she argues that the UIM provision was "explicitly purchased" for employees because only employees were allowed in the covered vehicles. Further, in Baker's estimation, the fact that Safety Source's insurance policy contained optional UIM coverage constitutes an explicit purchase of UIM coverage for employees.

The fact that an insurance policy contains a UIM provision does not mean that such benefits were necessarily explicitly purchased for employees. "An employee injured on the job by an underinsured third person is not permitted to recover [UIM] benefits provided under a *standard* policy by an employer's motor vehicle insurer." Nat. Union, 423 Mass. at 350 (emphasis added). The purpose of UIM coverage, which is to provide a safety net for certain persons not otherwise adequately protected, would be subverted if "coverage in a standard policy applied to employees' on-the-job motor vehicle injuries." Id. at 349. Employees who are injured in motor vehicles during the course of their employment are not entitled to "any greater insurance benefits than another person sustaining a similar injury in the course of employment but not in a motor vehicle." Id. Thus, while employers may have insurance coverage providing for UIM benefits, the *standard* or default interplay between such benefits and workers' compensation benefits is that an employee receives workers' compensation benefits to the exclusion of UIM benefits.

As the First Circuit notes, it is only in circumstances in which the employer's coverage provides "additional" coverage that there is any carve-out to the general rule precluding an employee from collecting both UIM and workers' compensation benefits. An employer must do something akin

to "bargain[ing]" for UIM coverage or "elect[ing]" UIM coverage in a manner that expresses its intent to "explicitly purchase" UIM coverage for the purpose of protecting employees from the harm of underinsured motorists over and above the protection afforded to them by workers' compensation. See Baker, 595 F.3d at 394 & n.7.

The Safety Source UIM coverage comes in the form of an endorsement that was attached to the general policy. Baker argues that the endorsement applies to employees and employees alone; constituting an explicit purchase for the purpose of protecting employees. In support of this contention, Baker argues that the president of Safety Source, Robert Kingman, stated in his deposition testimony that the company did not want employees to have passengers in the vehicles. R. Kingman Dep. 30:23-31:2, Docket No. 48-4. Baker, however, has not shown that there was a formal policy strictly limiting access to the covered vehicles to employees *only*. Rather, Robert Kingman stated that allowing others in the vehicles was "just not [a] very good business practice." R. Kingman Dep. 30:23-31:7. As additional argument, Baker states that she was told by Brian Kingman, a Safety Source employee, that she could not use the vehicle to pick up her children at school, Baker Dep. 29:19-30:4, Docket 48-7, but discouraging or prohibiting personal use of the vehicles does not correlate with a prohibition on all non-employee passengers at all times, specifically with regard to customers. Baker has not shown that non-employees were forbidden, at all times, from occupying the covered vehicles.

As an additional matter, Baker argues that the insurance policy was subject to an endorsement in which Safety Source certified that the covered vehicles would carry only "employees." The endorsement (endorsement MM 99 20 09 98) states, "You paid a reduced premium . . . because you certified that your covered 'auto' would be used only in your business and carry only your

8

'employees.'" Endorsement, Docket No. 48-3. As St. Paul notes, however, this endorsement does not apply to the motor vehicle policy at issue. The relevant Safety Source insurance policy is policy MA 05700143. The insurance policy number listed on the referenced endorsement is policy BA 01320676. Accordingly, in light of the discrepancy, there is no genuine dispute as to the fact that the endorsement does not apply to the policy in question.

It is only in circumstances in which an employer "explicitly purchases" UIM coverage for the benefit of employees injured during the course of their employment that an employee may recover both workers' compensation and UIM benefits. Baker has failed to demonstrate the coverage was "explicitly purchased" for employees. On summary judgment, it is not enough for her to argue that the UIM coverage was "explicitly purchased" for employees simply because they were the most likely vehicle occupants.

Baker's motion for summary judgment is denied.

B. St. Paul's Motion for Summary Judgment

St. Paul has made its own motion for summary judgment and argues that Safety Source's UIM coverage was not "explicitly purchased" for the purpose of protecting employees from injuries occurring during the course of their employment. St. Paul argues that, because the National Union carve-out does not apply, it is entitled to summary judgment on the basis that Baker's receipt of workers' compensation benefits bars her from recovering under the Safety Source UIM provision as well.

In support of its motion, St. Paul argues that the Safety Source UIM provision was intended to cover customers "occupying" the covered vehicles. St. Paul alleges that it was Safety Source's

9

understanding, via their insurance representative, that workers' compensation covered employees who were injured in the course of their employment; therefore, Safety Source did not "explicitly purchase" UIM coverage to cover employees' work-related injuries because it understood that employees were already protected.

Robert Kingman, Safety Source's president, was the individual in charge of purchasing the policy at issue. According to St. Paul, Robert Kingman was never aware that the insurance policy he was purchasing contained a UIM provision. Robert Kingman stated that "I never even understood that I was purchasing it." R. Kingman Dep. 25:15-16. St. Paul argues that Robert Kingman never told his insurance agent to specifically include the UIM provision and therefore never "bargained" for such coverage with an intent to cover employees injured on the job. Robert Kingman specifically stated in his deposition testimony that he neither requested nor intended the policy to cover employees for on-the-job injuries over and above what they were entitled to under workers' compensation. R. Kingman Dep. 12:17-24.

Safety Source's insurance agent, Robert Muenzberg, Jr. ("Muenzberg"), was aware of the interplay between workers' compensation and UIM benefits. He stated in his deposition testimony that if *only* employees were allowed in the vehicle then he probably would not have recommended UIM coverage. Muenzberg Dep. 25:19-26:7, Docket No. 48-6. Muenzberg stated that he discussed with Robert Kingman the fact that "[w]e're not concerned about the employee driving a company car on the job because that employee is covered by workers' compensation insurance." Muenzberg Dep. 24:16-20. Elaborating, he stated that the concern is "the out-of-state exposure beyond the compulsory Massachusetts limits and the possibility that that vehicle might have a passenger in it that's not an employee, perhaps a customer." Muenzberg Dep. 24:20-25:2.

The discrete factual issue on remand is whether the UIM coverage at issue was "explicitly purchased" for the purpose of covering employees injured in the course of their employment. Here, the president of Safety Source indicated that he was unaware of the UIM provision at the time of its purchase, and, nevertheless, never intended to cover employees for on-the-job injuries to a greater extent than their protection under workers' compensation. In addition, Muenzberg, an experienced insurance representative, stated that he would not have counseled Safety Source to purchase UIM coverage if only employees were allowed in the covered vehicles because he understood that employees were protected by workers' compensation for work-related injuries. Further, Baker never communicated with Safety Source specifically about underinsured motorist coverage, Baker Dep. 31:5-10, and the company never specifically represented to her that UIM coverage would apply to her.

Safety Source did not manifest an intent for the UIM provision to extend to employees either through its president, insurance representative, or its communications with employees. Further, deposition testimony reveals that there was no corporate policy restricting access to the covered autos solely to employees. Taking the facts in the light most favorable to Baker, St. Paul has shown that there is no genuine dispute as to whether the UIM coverage was "explicitly purchased." St. Paul has demonstrated that the policy at issue was of the *standard* sort acknowledged in National Union and, accordingly, the National Union carve-out does not apply.

St. Paul's motion for summary judgment is granted.

### IV. Conclusion

For the reasons stated above, Baker's motion for summary judgment is DENIED and St.

Paul's motion for summary judgment is GRANTED.

SO ORDERED

/s/ Mary M. Lisi

Mary M. Lisi
United States District Judge
June 2, 2011